UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| AUTUMN CORDELLIONÈ, also known as JONATHAN RICHARDSON,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER, INDIANA DEPARTMENT OF CORRECTION, in her official capacity,<br><br>Defendant. | No. 3:23-cv-135 |

**Complaint for Declaratory and Injunctive Relief / Notice to Challenge of Constitutionality of an Indiana Statute**

**Introduction**

1.  Autumn Cordellioné, also known as Jonathan Richardson, is an adult transgender female prisoner confined in a male institution within the Indiana Department of Correction ("DOC"). In approximately 2020, while in the DOC, she was diagnosed with gender dysphoria and was prescribed a female hormone and testosterone blocker, both of which she has consistently been prescribed and taken since that time. Although the hormones have helped to ameliorate the debilitating symptoms of her gender dysphoria, they have not relieved these symptoms entirely insofar as she continues to experience serious depression and anxiety. Accordingly, at this point gender-affirming surgery is necessary so that her physical identity can be aligned with her gender identity and so her

[1]

gender dysphoria can be ameliorated. At one point she was placed on a list within the DOC to be evaluated for this surgery. However, as of July 1, 2023, a new Indiana statute provides that the DOC may not under any circumstances provide or facilitate "sexual reassignment surgery," also known as gender-affirming surgery, for prisoners. Ind. Code § 11-10-3-3.5(a).

2. For some persons, including Plaintiff, the surgery is a medical necessity. By prohibiting the surgery, regardless of medical need, the statute mandates deliberate indifference to a serious medical need and therefore violates the Eighth Amendment. Additionally, the statute discriminates against Plaintiff and other transgender prisoners in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Accordingly, injunctive and declaratory relief should be granted so that Plaintiff may receive gender-affirming surgery.

**Jurisdiction, venue, and cause of action**

3. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

5. Declaratory relief is authorized pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201, 2202.

6. This action is brought pursuant 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

**Parties**

7.  Autumn Cordellioné, also known as Jonathan Richardson, is an adult person currently confined within the DOC's Branchville Correctional Facility, a male facility, in Perry County, Indiana.

8.  The Commissioner of the Indiana Department of Correction is the duly appointed head of the DOC and is responsible for implementing Indiana Code § 11-10-3-3-3.5.

**The challenged statute**

9.  Indiana Code § 11-10-3-3.5(a), effective July 1, 2023, provides that "[t]he department [of correction] may not authorize the payment of money, the use of any state resources, or the payment of any federal money administered by the state to provide or facilitate sexual reassignment surgery to an offender patient."

10. Indiana Code § 11-10-3-1(6) states that:

    "Sexual reassignment surgery" means performing any of the following surgical procedures for the purpose of attempting to alter the appearance of, or affirm the offender patient's perception of, his or her gender or sex, if that appearance or perception is inconsistent with the offender patient's sex:

    (A) Surgeries that sterilize, including castration, vasectomy, hysterectomy, oophorectomy, orchiectomy, and penectomy.

    (B) Surgeries that artificially construct tissue with the appearance of genitalia that differs from the offender patient's sex, including metoidioplasty, phalloplasty, and vaginoplasty.

    (C) Removing any healthy or non-diseased body part or tissue.

**Facts**

11.     Transgender persons are persons whose gender identities do not align with their sex assigned at birth.

12.     This lack of alignment frequently results in gender dysphoria, a severe psychological condition, recognized in the American Psychiatric Association's Diagnostic Statistical Manual-5-TR, which is characterized by a strong and persistent cross-gender identification and a persistent discomfort with one's sex or sense of inappropriateness in the gender role of that sex, causing clinically significant distress or impairment in social, occupational, or other important areas of functioning.

13.     If left untreated, gender dysphoria may result in serious anxiety, depression, suicidality, and other mental health issues.

14.     Transgender women without access to appropriate care may resort to attempting auto-castration in order to alleviate their distress.

15.     The generally accepted treatment for gender dysphoria is established in the Standards of Care for the Health of Transsexual, Transgender, and Gender Diverse People—Version 8 ("Standards of Care"), published by the World Professional Association for Transgender Health ("WPATH"), available at https://www.wpath.org/publications/soc. (last visited Aug. 20, 2023).

16.     One method of caring for gender dysphoria is the provision of gender affirming hormones, which for transgender women is generally a form of estrogen combined with

testosterone blocker.

17. When transgender women receive the hormone and testosterone blockers, they will develop female physical features. Among other things, they will develop breasts, have their facial hair diminish, develop increased body fat, and they will see the softening of their skin.

18. The WPATH Standards of Care recognize that in some situations gender-affirming hormonal therapy will not be sufficient to ameliorate the devastating symptoms of gender dysphoria.

19. In such a case what Indiana Code § 11-10-3-1(6) characterizes as "sexual reassignment surgery" is medically necessary. (Chapter 2, Statement 2.1).

20. The WPATH Standards of Care specify that the standard should apply equally to transgender persons who are incarcerated as well as to those who are not incarcerated. (Chapter 11, Statement 11.1). This includes the provision of medically necessary surgical treatments. (Chapter 11, Statement 11.4).

21. The clinical practice guidelines established by the Standards of Care are recognized as authoritative by leading mental health and medical organizations in the United States, including the American Medical Association, the American Psychiatric Association, and the American Psychological Association.

22. As noted in the Standards of Care:

> The consequences of denial of access to gender-affirming surgeries for residents of institutions who cannot access such care outside of their

      institutions may be serious, including substantial worsening of gender dysphoria symptoms, depression, anxiety, suicidality, and the possibility of surgical self-treatment (e.g., autocastration or autopenectomy).

*Id.*

23. For some persons "sexual reassignment surgery." as defined in Indiana Code § 11-10-3-1(6), is medically necessary treatment to resolve a serious medical need and is the only treatment that can do so.

24. Plaintiff is currently confined at the Branchville Correctional Facility after being convicted of a criminal offense.

25. Although Plaintiff was assigned the sex of male at birth, Plaintiff has identified as female since she was six-years old.

26. In early 2020 medical professionals in the DOC facility where she was housed diagnosed Plaintiff as suffering from gender dysphoria.

27. Long before her diagnosis, Plaintiff suffered from depression and anxiety caused by her gender dysphoria and by her recognition that she is a woman trapped in a man's body.

28. She has engaged in self-harm and has attempted suicide because she could not stand the fact that her sex at birth fails to match the fact that she is a woman and cannot tolerate her male body.

29. In 2020, while in the DOC, physicians employed by the medical provider contracted to provide services to DOC prisoners prescribed estradiol (estrogen) and

spironolactone (to suppress testosterone) to Plaintiff after she was recognized as suffering from gender dysphoria.

30. She has taken these medications consistently since they were prescribed to her.

31. The hormone has altered her body in the manner summarized above such that she is feminine in appearance.

32. She has also lived as a woman to the extent possible in a prison designated to house only men. She has requested gender-affirming items, and has been permitted to obtain bars, panties, make up, and form fitting clothing

33. Despite the receipt of hormonal therapy, she continues to suffer the serious negative symptoms of gender dysphoria. Specifically her genitals remain a source of extreme and continuing distress, which is getting worse. The very sight of her genitals causes her to have great anxiety. She has soiled herself rather than use the toilet because of the stress of seeing her genitals.

34. Her gender dysphoria and the continuing debilitating symptoms that she suffers because of it represents a serious medical need that must be treated.

35. She believes that the only remedy for her persistent gender dysphoria, and the serious harm it causes her, is to receive gender-affirming surgery, specifically an orchiectomy and vaginoplasty.

36. An orchiectomy is a surgical procedure that involves the surgical removal of the testes.

37. In addition to being medically necessary for some transgender men with gender dysphoria, an orchiectomy may be medically necessary in the case of some types of cancer in cisgender men.

38. Vaginoplasty is a surgical intervention that involves construction or reconstruction and repair of the vagina.

39. In addition to being medically necessary for some transgender men with gender dysphoria, vaginoplasty may be medically necessary for cisgender women for a host of reasons including repair of trauma, reconstruction of the vagina after undergoing radiation or surgery to treat cancer, and to correct congenital abnormalities.

40. Plaintiff has repeatedly requested that she be provided gender affirmation surgery.

41. She was told that she was going to be referred to a mental health professional to be interviewed for an evaluation for surgery, which was the procedure that was in place in the DOC before the effective date of Indiana Code § 11-10-3-3.5(a).

42. However, this evaluation never occurred and now will not occur because Indiana Code § 11-10-3-3.5(a) prohibits the provision of gender-affirming surgery, even if it is medically necessary.

43. Indiana Code § 11-10-3-3.5(a) is causing Plaintiff severe distress that cannot be alleviated as the statute prevents her from having medically necessary treatment, the prohibited "sexual reassignment surgery."

44. Plaintiff filed a grievance challenging the denial of her request for surgery. The grievance was denied, and she has fully exhausted the DOC's grievance system.

45. Indiana prisoners are allowed to receive medically necessary surgery, with the exception of the surgery now prohibited by Indiana Code § 11-10-3-3.5(a).

46. This discrimination represents discrimination based on sex and transgender status and is not supported by any governmental interest.

47. Indiana Code § 11-10-3-3.5(a) is a law that targets transgender prisoners and makes it impossible for them to receive necessary medical care for no proper legislative end or purpose.

48. Other than Indiana Code § 11-10-3-3.5(a), there is no other Indiana law that categorically denies medically necessary care to a discrete class of prisoners.

49. At all times defendant has acted under color of state law.

50. Plaintiff is suffering irreparable harm for which there is no adequate remedy at law.

**Legal claim**

51. To the extent that Indiana Code § 11-10-3-3.5(a) prohibits necessary medical treatment, it requires defendant and the DOC to be deliberately indifferent to serious medical needs of Plaintiff in violation of the Eighth Amendment to the United States Constitution.

52. Non-transgender Indiana prisoners can receive medically necessary surgeries,

including vaginoplasties and orchiectomies. However, Indiana Code § 11-10-3-3.5(a), denies medically necessary surgical care, including vaginoplasties and orchiectomies, to transgender prisoners because of their status as transgender persons. This unwarranted and intentional discrimination against Plaintiff and other transgender prisoners, because of their transgender status, violates equal protection.

WHEREFORE, plaintiff requests that this Court:

a. Accept jurisdiction of this case and set it for hearing at the earliest opportunity.

b. Declare that Indiana Code § 11-10-3-3.5(a) is unconstitutional for the reasons noted above.

c. Enter a preliminary injunction, later to be made permanent, enjoining defendant from enforcing Indiana Code § 11-10-3-3.5(a) and requiring defendant to take all steps necessary to provide plaintiff with gender affirming surgery, including the necessary preparatory steps prior to performance of the surgery, and providing the surgery itself.

d. Award plaintiff her costs and reasonable attorneys' fees.

e. Award all other proper relief.

Kenneth J. Falk
Stevie J. Pactor
Gavin M. Rose
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
kfalk@aclu-in.org
spactor@aclu-in.org
grose@aclu-in.org

Attorneys for Plaintiff