| | State of Indiana<br>Indiana Department of Correction | Effective Date | Page 1 of | Number |
|---|---|---|---|---|
| INDIANA DEPARTMENT OF CORRECTION | | 4/1/2020 | 47 | 02-01-115 |

**POLICY AND ADMINISTRATIVE PROCEDURE**
**Manual of Policies and Procedures**

Title
# SEXUAL ABUSE PREVENTION

| Legal References (includes but is not limited to) | Related Policies/Procedures (includes but is not limited to) | Replaces: |
|---|---|---|
| IC 11-8-2-5(a)(8)<br>IC 11-8-2-9<br>IC 11-10-1-1 *et seq.*<br>IC 11-10-2-1 *et seq.*<br>IC 11-10-3-1 *et seq.*<br>IC 11-11-6-1<br>IC 16-21-8-1.5<br>IC 35-42-4-1<br>IC 35-42-4-2<br>IC 35-42-4-8<br>IC 35-44.1<br>IC 35-45-4-5<br><br>USDOJ Standards to Prevent, Detect, and Respond to Prison Rape Final Rule | 00-01-103 02-01-107<br>00-02-301 02-04-101<br>00-04-201 03-01-101<br>01-02-101 03-02-101<br>01-03-103 03-02-103<br>01-04-101 03-02-104<br>01-04-104 03-03-101<br>01-04-106 04-03-103<br>01-05-101<br><br>HCSD 2.30A<br>HCSD 2.30Y<br>Health Services Sexual Assault Manual | 02-01-115, effective date 8/1/2016 / ED # 16-44<br><br>EXHIBIT 16 11-29-23 |

I. PURPOSE:

The purpose of this policy and administrative procedure is to establish guidance for staff and offenders regarding the prevention of sexual assaults and those actions to be taken in cases of alleged sexual abuse and sexual harassment by staff or offenders, including the establishment of a coordinated, multi-disciplinary team to respond to incidents of sexual abuse to ensure victims receive the medical and support services needed and that investigators obtain evidence to substantiate allegations and hold perpetrators accountable.

II. POLICY STATEMENT:

It is the policy of the Indiana Department of Correction to provide a safe and secure environment for all staff, volunteers, contractual staff, visitors, official visitors, and offenders; and to maintain a program for the prevention of sexual abuse and sexual harassment in any facility operated by the Department or with which the Department

contracts. The Department of Correction is committed to zero (0) tolerance for all forms of sexual abuse and sexual harassment between staff, volunteers, contractors, contractual staff, visitors, or official visitors, and offenders whether committed by staff, volunteers, contractual staff, visitors, or other offenders. Sexual activity between staff, volunteers, contractual staff, visitors, or official visitors, and offenders, regardless whether consensual or not, is strictly prohibited. In cases where sexual abuse and sexual harassment have been alleged, a prompt and thorough investigation shall be conducted. In those cases where it appears that sexual abuse and sexual harassment has taken place, prompt intervention shall be provided and all appropriate disciplinary actions shall be taken, including the possibility of criminal prosecution.

In accordance with Policy and Administrative Procedure 04-03-103, "Indiana Department of Correction Information and Standards of Conduct," all staff, contractual staff, and volunteers have an affirmative duty to report all allegations or knowledge of sexual abuse, sexual harassment, or sexual activity that takes place within the jurisdiction of the Department of Correction. Upon substantiation of any allegations of sexual abuse and sexual harassment, appropriate disciplinary action will be taken against staff, contractual staff, volunteers, or offenders, including possible criminal prosecution.

III. DEFINITIONS:

For the purpose of this policy and administrative procedure, the following definitions are provided:

A. ABUSIVE SEXUAL CONTACT: Non-penetrative contact of a sexual nature by an offender against another offender without his or her consent, or of an offender who is unable to consent or refuse which includes intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh or buttocks of any offender. (Does not include kicking, punching, or grabbing the genitals when the intent is to harm or debilitate rather than to sexually exploit or contact is incidental to an altercation.)

B. ENDANGERED/VULNERABLE ADULT: An individual who is

1. At least eighteen (18) years of age;

2. Incapable by reason of mental illness, intellectual and/or developmental disability, dementia, habitual drunkenness, excessive use of drugs, or other physical or mental incapacity of managing or directing the management of the individual's property or providing or directing the prevision of self-care; and,

3. Harmed, or threatened with harm as a result of neglect, battery; or exploitation of the individual's personal services or property.

C. EXECUTIVE DIRECTOR of PREA: The staff person appointed by the Commissioner to serve as the Department-wide PREA Administrator that will oversees facility sexual assault prevention programs, sexual assault reporting and Department compliance with national PREA standards.

D. GENDER IDENTITY: A person's internal, deeply felt sense of being male or female regardless of the person's sex at birth.

E. INTERN: An individual who is enrolled in a higher educational institution and who may receive academic credit for assisting in a facility's program.

F. INTERSEX: A person whose sexual or reproductive anatomy or chromosomal pattern does not seem to fit typical definitions of male or female. Intersex medical conditions are sometimes referred to as disorders of sex development.

G. NONCONSENSUAL SEXUAL ACT: Contact of a sexual nature by an offender against another offender without his or her consent, or an offender unable to consent or refuse including: contact between the penis and the vulva or the penis and the anus including penetration, however slight; contact between the mouth and the penis, vulva or anus; or, penetration of the anal or genital opening of another offender by a hand, finger or other object. (Does not include kicking, punching, or grabbing the genitals when the intent is to harm or debilitate rather than to sexually exploit.)

H. OFFENDER: An adult or juvenile person committed to a department of correction (federal, state, or local) and housed or supervised in a facility either operated by the department of correction or with which the department of correction has a contract, including an adult or juvenile under parole supervision; under probation supervision following a commitment to a department of correction; in a minimum security assignment, including an assignment to a community transition program.

I. OFFICIAL VISITOR: Any visitor who is visiting an offender in regards to providing an official service for the benefit of the offender or the community, such as attorneys, law enforcement, parole/probation officers, representatives of government agencies, elected officials, etc.

J. PREA AGGRESSOR LIKELY: An offender identified by the Sexual Violence Assessment Tool as having a history of sexually assaultive behavior or is determined to be likely to use aggression, coercion, force, or familiarity with the prison environment in order to manipulate/control a potential victim.

K. PREA COMPLIANCE MANAGER: The staff person designated by the Warden to oversee the sexual assault prevention program at the facility, sexual assault reporting, and facility compliance with national standards and Department Policy.

L. PREA VICTIM LIKELY: An offender identified by the Sexual Violence Assessment Tool who may need special services due to being a victim of sexual assault or misconduct or who is potentially susceptible to becoming a victim of sexual assault or misconduct while in a correctional setting.

M. RESTRICTIVE STATUS HOUSING: A form of housing for offenders whose continued presence in the general population would pose a serious threat to life, property, self, staff, other offenders, or to the security or orderly operation of a correctional facility. This definition does not include protective custody.

N. SEXUAL ABUSE: Sexual abuse of an offender by another offender or staff member includes any of the following acts, if the victim does not consent, is coerced into such act by overt or implied threats of violence, or is unable to consent or refuse: Abusive Sexual Contact, Non-Consensual Sexual Act and Staff Sexual Misconduct.

O. SEXUAL ASSAULT FORESENIC EXAMINER (SAFE): Specially trained physician from the community qualified and certified to perform forensic examinations of sexual assault victims to ensure proper victim care and proper collection of any evidence of the assault.

P. SEXUAL CONTACT: Contact between persons that includes any of the following:

1. Touching of the intimate parts of one person to any part of another person whether clothed or unclothed; or,

2. Any touching by any part of one person or with any object or device of the intimate parts of another person or any parts of the body that may result in sexual arousal or gratification for either party.

Q. STAFF MEMBER/EMPLOYEE: Any and all persons employed by the Department, including contractors and volunteers.

R. SEXUAL HARRASSMENT:

1. Verbal statements or comments of a sexual nature to an offender by an employee, volunteer, contractor, official visitor, or Department representative or statements including demeaning references to gender, sexually suggestive or derogatory comments about body or clothing; or obscene language or gestures.

2. Repeated and unwelcome sexual advances, requests for sexual favors, or verbal comments, gestures, or actions of a derogatory or offensive sexual nature by one offender directed toward another.

S. STAFF/VOLUNTEER/CONTRACTOR SEXUAL MISCONDUCT: Sexual abuse of an offender by a staff member, contractor, or volunteer includes any of the following acts, with or without consent of the offender:

1. Contact between the penis and the vulva or the penis and the anus, including penetration, however slight;

2. Contact between the mouth and the penis, vulva, or anus;

3. Contact between the mouth and any body part where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

4. Penetration of the anal or genital opening, however slight, by a hand, finger, object, or other instrument, that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

5. Any other intentional contact, either directly or through the clothing, of or with the genitalia, anus, groin, breast, inner thigh, or the buttocks, that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

6. Any attempt, threat, or request by a staff member, contractor, or volunteer to engage in the activities described in paragraphs (1)-(5) of this definition;

7. Any display by a staff member, contractor, or volunteer of his or her uncovered genitalia, buttocks, or breast in the presence of an offender, and

8. Voyeurism by a staff member, contractor, or volunteer of a sexual nature unrelated to official duties.

T. SUBSTANTIATED: An allegation that was investigated and determined to have occurred based on a preponderance of the evidence.

U. TRANSGENDER: A term describing persons whose gender identity and/or expression do not conform to the gender roles assigned to them at birth.

V. UNFOUNDED: An allegation that was investigated and determined not to have occurred, based upon preponderance of evidence.

W. UNSUBSTANTIATED: An allegation that was investigated and the investigation

produced insufficient evidence to make a final determination as to whether or not the event occurred.

X. VOLUNTEER: An individual giving his/her time to Department facilities without compensation.

Y. VOYEURISM: Knowingly or intentionally peeping (any looking of a clandestine, surreptitious, prying, or secretive nature) into an area where an offender can reasonably be expected to be in a state of undress, for the purpose of sexual gratification, unrelated to official job duties, such as security checks.

Z. YOUTHFUL OFFENDER: Any offender under the age of eighteen (18) years who has been sentenced as an adult for a crime and committed to the Department.

IV. PREVENTION PLANNING:

A. **Zero Tolerance of Sexual Abuse and Sexual Harassment; PREA Coordinator (115.11/311)**

1. The Department shall maintain a position of zero (0) tolerance for all forms of sexual abuse and sexual harassment by staff, volunteers, contractors, or offenders against offenders. Sexual abuse and sexual harassment includes: abusive sexual contact by an offender against another offender; nonconsensual sexual acts by an offender against another offender; staff/volunteer/offender/contractor sexual harassment of an offender; and, staff/volunteer/contractor sexual misconduct against an offender. This zero (0) tolerance of sexual abuse and sexual harassment applies to all Department facilities and all facilities and programs providing services to offenders committed to the Department.

2. The Department shall employ or designate an upper-level, agency-wide PREA Coordinator with sufficient time and authority to develop, implement, and oversee agency efforts to comply with the PREA standards in all of its facilities.

3. Each facility shall designate a PREA compliance manager with sufficient time and authority to coordinate the facility's efforts to comply with the PREA standards. The Warden shall designate a staff person to serve as the PREA Compliance Manager. The staff person designated to serve in this capacity should be a staff person in a supervisory position who has broad experience and the knowledge, skills and abilities to implement and evaluate the facility's Sexual Abuse Prevention Program and compliance with all PREA standards.

The duties of the PREA Compliance Manager shall include:

1. Monitoring for PREA standards compliance at the facility by conducting quarterly compliance reviews;

2. Monitoring the need for new SART first responders to attend training;

3. Ensuring that the facility has a program for the evaluation, treatment, and counseling of sexual abuse victims and sexual abuse perpetrators;

4. Assisting in the identification and utilization of community resources available for the provision or development of emotional support services for offenders through victim advocates and collection of evidence through forensic exams by SANEs or SAFEs;

5. Completing Sexual Incident Reports for all allegations of sexual abuse and sexual harassment occurring in the facility. This information can be found through the use of the facility incident reports and any other sources deemed appropriate. The SEXUAL INCIDENT REPORT is to be initiated no later than one week from the initial report of sexual abuse or sexual harassment being made or upon completion of the investigation.

6. Ensuring the PREA Potential Aggressor flags and PREA Potential Victim flags are updated in the offender information system/juvenile data system based upon the most recent Sexual Violence Assessment Tool;

7. Serving as Facility PREA Committee Chairperson; and,

8. Managing and preparing the facility for PREA audits by:

   a. Providing required facility documentation;

   b. Making staff and offenders available for interview;

   c. Providing auditors a facility tour; and,

   d. Completing a corrective action plan, when applicable.

**B. Contracting With Other Entities for the Confinement of Offenders (115.12/312)**

1. When the Department contracts for the confinement of its offenders with private agencies or other entities, including other government agencies, shall include in any new contract or contract renewal the entity's obligation to adopt and comply with the PREA standards.

2. Any new contract or contract renewal shall provide for Department contract monitoring to ensure that the contractor is complying with the PREA standards. The Department shall ensure that all agencies and organizations that house offenders committed to the Department, including county jails, group homes, private contractors, etc. are made aware of the Department's position. During inspections of county jails, county juvenile detention facilities, group homes, community corrections facilities or any facility holding Department offenders, the Executive Liaison for Sheriff and County Jail Operations or Director of Policy Development and Accreditation or designee(s) shall ensure that the facility being inspected has a mechanism in place to address allegations of sexual abuse and sexual harassment. Also, when contracts are prepared with agencies and organizations to house offenders for the Department, a provision shall be included to ensure that the agency/organization maintains zero (0) tolerance for sexual abuse and sexual harassment and has a mechanism in place to address allegations of sexual abuse and sexual harassment in accordance with PREA standards.

The Department shall share information with these agencies and organizations regarding the Department's program to prevent sexual abuse and sexual harassment.

**C. Supervision and Monitoring (115.13/313)**

1. The Department shall ensure that each facility it operates shall develop, document, and make its best efforts to comply on a regular basis with a staffing plan that provides for adequate levels of staffing, and, where applicable, video monitoring, to protect offenders against sexual abuse. In calculating adequate staffing levels and determining the need for video monitoring, facilities, shall take into consideration:

   a. Generally accepted adult/juvenile detention and correctional practices;

   b. Any judicial findings of inadequacy;

   c. Any findings of inadequacy from Federal investigative agencies;

   d. Any findings of inadequacy from internal or external oversight bodies;

   e. All components of the facility's physical plant (including "blind-spots" or areas where staff or offenders may be isolated);

   f. The composition of the offender population;

g. The number and placement of supervisory staff;

h. Institution programs occurring on a particular shift;

i. Any applicable State or local laws, regulations, or standards;

k. The prevalence of substantiated and unsubstantiated incidents of sexual abuse;

l. Staffing ratios of 1:8 during waking hours and 1:16 during sleeping hours, except during limited and discrete exigent circumstances, which shall be fully documented and include on security trained staff (**Division of Youth Services facilities Only**); and,

m. Any other relevant factors;

2. The staffing plan shall be reviewed, updated, and submitted to the assigned Executive Director of Adult Facilities, Executive Director of Youth Services, and Executive Director of PREA annually, no later than January 31 of each year.

a. In circumstances where the staffing plan is not compliant, the facility shall document and justify all deviations from the plan on shift reports.

b. During the annual review of each facility staffing plan the assigned Executive Director of Adult Facilities or Executive Director of Youth Services, in consultation with the Executive Director of PREA, shall assess, determine, and document whether adjustments are needed to:

1) The staffing plan established pursuant to paragraph (1) of this section;

2) Prevailing staffing patterns;

3) The facility's deployment of video monitoring systems and other monitoring technologies; and,

4) The resources the facility has available to commit to ensure adherence to the staffing plan.

c. Each facility shall require intermediate-level or higher-level supervisors conduct and document unannounced rounds to identify and deter staff sexual abuse and sexual harassment on each shift.

Staff shall be prohibited from alerting other staff members that these supervisory rounds are occurring, unless such announcement is related to the legitimate operational functions of the facility. Rounds will be documented in housing unit logs.

**D. 115.14 Youthful Offenders**

A youthful offender shall not be placed in a housing unit in which the youthful offender will have sight, sound, or physical contact with any offender eighteen (18) years of age or older through use of a shared dayroom or other common space, shower area, or sleeping quarters.

Youthful offenders shall be processed through a DYS Intake unit when being received by the Department. Youthful offenders will not be housed in adult facilities. They shall be housed in designated Division of Youth Services facilities in accordance with Policy and Administrative Procedure 01-04-102, "Classification Assignments for Youthful Offenders."

**E. Limits to cross-gender viewing and searches (115.15/315)**

1. Staff shall not conduct cross-gender strip searches or cross-gender visual searches (meaning a search of the anal or genital opening) except in exigent circumstances or when performed by medical practitioners. No staff shall conduct cross-gender strip searches except in emergency circumstances. Body cavity searches shall only be performed by medical personnel in accordance with Policy and Administrative Procedure 02-03-101, "Searches."

2. Female facilities shall not permit cross-gender pat-down searches of female offenders, absent exigent circumstances. Facilities shall not restrict a female offender's access to regularly available programming or other out-of-cell opportunities in order to comply with this provision. Staff shall not conduct cross gender pat searches of male or female juvenile offenders except in exigent circumstances.

3. All cross-gender strip searches, cross-gender visual, cross-gender pat-down searches of female offenders, and cross gender pat searches of juvenile offenders conducted during emergency circumstances shall be thoroughly documented and provide justification for the search. Each incident shall be reviewed by the Warden or designee to determine that the exigent circumstances standard was met. Body cavity searches shall only be performed by medical personnel in accordance with Policy and Administrative Procedure 02-03-101, "Searches."

4. All offenders and juvenile offenders shall be afforded the ability to shower, perform bodily functions, and change clothing without nonmedical staff of the opposite gender viewing their breasts, buttocks, or genitalia, except in emergency circumstances or when such viewing is incidental to routine security rounds and cell checks. All staff of the opposite gender of the offender population shall announce their presence when entering an offender housing unit or bathroom area. Custody staff may announce their presence to the offender population in the housing unit in which they are assigned at the beginning of their duty shift. This announcement must be clear and done so in a manner that ensures all offenders in the unit were given reasonable notice of opposite gender staff being present. These announcements shall be documented in housing unit logs. Opposite gender staff shall make announcements prior to entering bathroom and shower areas to give offenders and students a chance to cover up when they are in a state of undress.

5. Opposite gender video surveillance monitoring of offenders who are confined to restrictive status housing or Protective Custody, or are in an area where offenders can be observed in a state of undress, other than incidental viewing or viewing for purposes of an investigation shall be prohibited. Offenders who are placed on constant observation status by Mental Health staff shall be provided constant visual supervision by a person of the same gender.

6. Staff shall not search or physically examine a transgender or intersex offender for the sole purpose of determining the offender's genital status. If the offender's genital status is unknown, it may be determined during conversations with the offender by medical and mental health staff, by reviewing medical records, or, if necessary, by learning that information as part of a broader medical examination conducted in private by a medical practitioner.

7. The Department shall train security/Custody staff how to conduct cross-gender pat searches, and searches of transgender and intersex offenders, in a professional and respectful manner, and in the least intrusive manner possible, consistent with security needs.

**F. Offenders with Disabilities and Offenders Who are Limited English Proficient (115.16/316)**

1. The Department shall take appropriate steps to ensure that offenders with disabilities (including, for example, offenders who are deaf or hard of hearing, those who are blind or have low vision, or those who have intellectual, psychiatric, or speech disabilities), have an equal opportunity

to participate in or benefit from all aspects of the Department's efforts to prevent, detect, and respond to sexual abuse and sexual harassment. Such steps shall include, when necessary to ensure effective communication with offenders who are deaf or hard of hearing, providing access to interpreters who can interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary. In addition, the Department shall ensure that written materials are provided in formats or through methods that ensure effective communication with offenders with disabilities, including offenders who have intellectual disabilities, limited reading skills, or who are blind or have low vision. A facility is not required to take actions that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity, or in undue financial and administrative burdens, as those terms are used in regulations promulgated under title II of the Americans With Disabilities Act, 28 CFR 35.164.

2. Staff shall determine if an offender is in need of accommodations by reviewing the offender's mental health, education, and classification records in addition to interviewing the offender. Offenders that have a disability may be accommodated in accordance with Policy and Administrative Procedure 00-02-202, "Offenders/Students with Physical Disabilities." Accommodations may be made using a Braille version of the offender PREA brochure, an American Sign Language interpreter through a State QPA, showing the PREA video with closed captioning, reading the offender PREA brochure, etc. Mental Health or Education staff may assist with communications with offenders with developmental disabilities.

3. The Department shall take reasonable steps to ensure meaningful access to all aspects of the Department's efforts to prevent, detect, and respond to sexual abuse and sexual harassment to offenders with limited English proficiency, including steps to provide interpreters who can interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary.

4. Written materials that communicate the sexual abuse prevention program will be provided in Spanish. Interpretive services, in-person and telephonic, are available to offenders with limited English proficiency through a state QPA. All facilities shall have an account with the contractor to utilize these services as needed. All staff shall be made aware that these services are available and the staff designated to provide access to the interpretive service.

5. The Department shall not rely on offender interpreters, offender readers, or

other types of offender assistants except in limited circumstances where an extended delay in obtaining an effective interpreter could compromise the offender's safety, the performance of first-response duties under 115.64/364, or the investigation of the offender's allegations. Offender interpreters shall not be used to provide the PREA education to offenders at intake to a facility.

**G. Hiring and Promotion Decisions (115.17/317)**

1. The Department shall not hire or promote anyone who may have contact with offenders, and shall not enlist the services of any contractor who may have contact with offenders, who:

    a. Has engaged in sexual abuse in a prison, jail, lockup, community confinement facility, juvenile facility, or other institution (as defined in 42 U.S.C. 1997);

    b. Has been convicted of engaging or attempting to engage in sexual activity in the community facilitated by force, overt or implied threats of force, or coercion, or if the victim did not consent or was unable to consent or refuse; or

    c. Has been civilly or administratively adjudicated to have engaged in the activity described in paragraph (1)(b) of this section. *(See also Policy and Administrative Procedure 04-03-103, "Information and Standards of Conduct")*

2. The Department shall consider any incidents of sexual harassment in determining whether to hire or promote anyone, or to enlist the services of any contractor, who may have contact with offenders.

3. Before hiring new employees who may have contact with offenders, the Department shall:

    a. Perform a criminal background records check;

    b. Consult any child abuse and sex offender registry maintained by the State or locality in which the employee would work; (Juvenile Facilities only) and,

    c. Human Resources staff shall make their best effort to contact all prior institutional employers for information on substantiated allegations of sexual abuse or any resignation during a pending investigation of an allegation of sexual

abuse. The employment background check shall be documented on the PREA Questionnaire for Prior Institutional Employers form.

4. The Department shall also perform a criminal background records check before enlisting the services of any contractor who may have contact with offenders.

5. The Department shall conduct criminal background records checks every four (4) years of current employees, contractors, and volunteers who may have contact with offenders.

6. The Department shall ask all applicants and employees who may have contact with offenders directly about previous misconduct described in paragraph 1 of this section in written applications or interviews for hiring or promotions and in any interviews or written self-evaluations conducted as part of reviews of current employees. The Department shall also impose upon employees a continuing affirmative duty to disclose any such misconduct. Human Resource staff shall ensure the Mandatory PREA Questions form is completed by the applicant prior to hire or promotion.

7. Material omissions regarding such misconduct, or the provision of materially false information, shall be grounds for termination.

8. Unless prohibited by law, the Department shall provide information on substantiated allegations of sexual abuse or sexual harassment involving a former employee upon receiving a request from an institutional employer for whom such employee has applied to work. The PREA Release of Information form shall be used to document the release of that information. This form must be signed by the former employee before the Department can provide the information. *(Also, see Policy and Administrative Procedure 04-03-102, "Department of Correction Human Resources")*

**H. Upgrades to Facilities and Technologies (115.18/318)**

1. When designing or acquiring any new facility and in planning any substantial expansion or modification of existing facilities, the Department shall consider the effect of the design, acquisition, expansion, or modification upon the Department's ability to protect offenders from sexual abuse.

2. When installing or updating a video monitoring system, electronic surveillance system, or other monitoring technology, the Department shall

consider how such technology may enhance the Department's ability to protect offenders from sexual abuse.

The facility PREA Compliance Manager shall be included in planning at the facility level and the Executive Director of PREA shall be consulted in planning at the agency level.

V. RESPONSIVE PLANNING:

**A. Evidence Protocol and Forensic Medical Examinations (115.21/321)**

1. To the extent the Department is responsible for investigating allegations of sexual abuse; the Department shall follow a uniform evidence protocol that maximizes the potential for obtaining usable physical evidence for administrative proceedings and criminal prosecutions. *(Also see Policy and Administrative Procedure 00-01-103 Investigations and Intelligence)*

2. The protocol shall be developmentally appropriate for youth where applicable, and, as appropriate, shall be adapted from or otherwise based on the most recent edition of the U.S. Department of Justice's Office on Violence Against Women publication, "A National Protocol for Sexual Assault Medical Forensic Examinations, Adults/Adolescents," or similarly comprehensive and authoritative protocols developed after 2011.

3. If the alleged incident occurred within one hundred twenty (120) hours of the report, staff shall ensure that appropriate actions are taken to preserve as much evidence as possible (e.g., if the sexual conduct involves intercourse, the alleged victim shall be instructed not to shower or otherwise clean themselves, drink, use the toilet, brush their teeth, remove clothing, etc.). If the alleged perpetrator is known, staff shall require them to follow the same actions as with the alleged victim in order to preserve any possible evidence of any sexual abuse.

4. The Department shall offer all victims of sexual abuse access to forensic medical examinations at an outside facility, without financial cost, where evidentiary or medically appropriate. Such examinations shall be performed by Sexual Assault Forensic Examiners (SAFEs) or Sexual Assault Nurse Examiners (SANEs). If SAFEs or SANEs cannot be made available, the examination can be performed by other qualified medical practitioners. The Department shall document its efforts to provide SAFEs or SANEs.

5. Health Services staff can aid in the preservation of evidence by instructing

both the alleged victim and alleged abuser not to take any actions that could destroy physical evidence and assisting with the arrangement of a forensic exam by a SANE at a local hospital at no cost to the offender whether they name an abuser or cooperate with the investigation. The Sexual Assault Nurse Examiner (SANE) is to provide the forensic exam component of the SART. Non-Facility SANE personnel will take a medical history, perform the physical assessment of the victim, collect, document, and initiate the preservation of physical evidence found on the victim and their personal effects. They will provide information on medical matters; document the examination and, if called upon, present expert testimony in court. Identification of SANE professionals in the local community shall be arranged by the PREA Compliance Manager and the contracted medical provider. Only qualified SANE professionals shall be utilized to conduct the forensic sexual assault examination.

6. The facility shall attempt to make available to the victim a community victim advocate from a rape crisis center. If a rape crisis center is not available to provide victim advocate services, the facility shall provide these services with a qualified facility staff member. The qualified staff member shall be staff trained as a SART first responder that demonstrates an understanding of the role of a victim advocate from the SART victim advocate curriculum.

7. As requested by the victim, the community victim advocate, qualified SART first responder shall accompany and support the victim through the forensic medical examination process and investigatory interviews and shall provide emotional support, crisis intervention, information, and referrals.

8. For the purposes of this section, a qualified staff member shall be an individual who has been screened for appropriateness to serve in this role and has received education concerning sexual assault and forensic examination issues in general through the SART First Responder training.

**B. Policies to Ensure Referrals of Allegations for Investigations (115.22/322)**

1. The Department shall ensure that an administrative or criminal investigation is completed for all allegations of sexual abuse and sexual harassment.

2. All allegations of sexual abuse and sexual harassment shall be investigated even when the alleged perpetrator or alleged victim have left the Department's employment, or are no longer under Department authority. Allegations of sexual abuse shall be investigated by the facility's Investigations and Intelligence (I&I) staff. Allegations of sexual harassment shall be investigated by staff designated by the Warden to conduct

administrative investigations. I&I investigators shall complete all investigations where evidence indicates a possible criminal violation. All investigations shall be documented in an investigation report. *(Also see Policy and Administrative Procedure 00-01-103, "Investigations and Intelligence").*

VI. TRAINING AND EDUCATION:

**A. Employee Training (115.31/331)**

1. The Department shall train all employees who may have contact with offenders on:

   a. Its zero-tolerance policy for sexual abuse and sexual harassment;

   b. How to fulfill their responsibilities under Department sexual abuse and sexual harassment prevention, detection, reporting, and response policies and procedures;

   c. Offenders' right to be free from sexual abuse and sexual harassment;

   d. The right of offenders and employees to be free from retaliation for reporting sexual abuse and sexual harassment;

   e. The dynamics of sexual abuse and sexual harassment in confinement;

   f. The common reactions of sexual abuse and sexual harassment victims;

   g. How to detect and respond to signs of threatened and actual sexual abuse;

   h. How to avoid inappropriate relationships with offenders;

   i. How to communicate effectively and professionally with offenders, including lesbian, gay, bisexual, transgender, intersex, or gender nonconforming offenders;

   j. How to comply with relevant laws related to mandatory reporting of sexual abuse to outside authorities; and,

   k. Relevant laws regarding the age of consent.

2. This training shall include an explanation of inappropriate contact with offenders as described in Policy and Administrative Procedure 04-03-103, "Information and Standards of Conduct for Departmental Staff," and the

prohibitions against sexual contact with offenders as stated in the Indiana Code (IC 35-44.1). As a part of this training, staff shall be provided with a brochure created to assist staff in identifying incidents of sexual abuse and sexual harassment.

a. Such training shall be tailored to the gender of the offenders at the employee's facility and the unique needs and attributes of juvenile offenders (DYS facilities only). The employee shall receive additional training if the employee is reassigned from a facility that houses only male offenders to a facility that houses only female offenders, or vice versa.

b. All new employees shall complete the PREA training during the new employee training process and all current employees shall complete the PREA training annually as part of the in-service training requirement. *(Also see Policy and Administrative Procedure 01-05-101, "Staff Development and Training.")*

c. The Department shall document, through employee signature or electronic verification that employees understand the training they have received and shall be documented on the PREA Training Acknowledgement form.

**B. Volunteer and Contractor Training (115.32/332)**

1. The Department shall ensure that all volunteers and contractors who have contact with offenders have been trained on their responsibilities under the Department's sexual abuse and sexual harassment prevention, detection, and response policies and procedures.

2. All contractors, volunteers, interns, and community crew supervisors shall complete the PREA training curriculum that employees are required to complete. This training shall be completed prior to contact with an offender and shall be completed annually. The level and type of training provided to volunteers and contractors shall be based on the services they provide and level of contact they have with offenders, but all volunteers and contractors who have contact with offenders shall be notified of the Department's zero-tolerance policy regarding sexual abuse and sexual harassment and informed how to report such incidents by being provided with a copy of the Staff PREA Brochure.

3. The Department shall maintain documentation confirming that volunteers and contractors understand the training they have received. The training shall be documented on the PREA Training

Acknowledgement form.

C. **Offender Education (115.33/333)**

1. During the Intake process, offenders shall receive information explaining the Department's zero-tolerance policy regarding sexual abuse and sexual harassment and how to report incidents or suspicions of sexual abuse or sexual harassment by being provided a copy of the Offender PREA Brochure.

All offenders housed in the Department shall receive as a part of the orientation to a facility an educational segment regarding sexual abuse and sexual harassment prevention. The offender shall be provided with verbal, video and written information regarding:

- The Department's zero tolerance of any sexual abuse and sexual harassment;
- Offender rights to be free from sexual abuse and sexual harassment;
- Offender rights to be free from retaliation for reporting sexual abuse and sexual harassment;
- How to prevent sexual abuse;
- Self-protection;
- Reporting sexual abuse and sexual harassment; and,
- Treatment and counseling available to offenders who are victims of sexual abuse.

As a part of the offender's orientation, the offender shall be given a brochure created by the Department advising the offender of the potential dangers of sexual abuse and sexual harassment and the Department's zero (0) tolerance for such behavior. Additionally, staff at the facility shall supplement the information in the brochure by providing information specific to reporting sexual abuse and sexual harassment at the facility. This information shall also be included in the facility's orientation information given to the offender. Staff shall address any questions the offenders might ask regarding sexual abuse and sexual harassment.

2. Within seven (7) days of Intake or transfer, the facility shall provide comprehensive education to offenders either in person or through video regarding their rights to be free from sexual abuse and sexual harassment and to be free from retaliation for reporting such incidents, and regarding Department policies and procedures for responding to such incidents.

3. All offenders shall receive PREA education upon transfer to a different

facility.

4. The Department shall provide offender education in formats accessible to all offenders, including those who are limited English proficient, deaf, visually impaired, or otherwise disabled, as well as to offenders who have limited reading skills.

   The presentation of this information shall be in a manner that is easily understandable to the offenders. Staff shall determine if an offender is in need of accommodations by reviewing the offender's mental health, education, and classification records in addition to interviewing the offender. Offenders with English language proficiency issues or disabilities (i.e. hearing or visual impairment, mental health or learning disabilities) shall be provided assistance to ensure effective communication of the Department's Sexual Abuse Prevention policy and procedures for reporting abusive sexual behavior. This may involve staff reading the policy and procedure to the offender or utilizing an interpreter.

5. The Department shall maintain documentation of offender participation in these education sessions.

   Additionally, it shall be noted in each offender's record that the offender received the brochure and was made aware of all appropriate information regarding the Department's Zero Tolerance for all sexual abuse and sexual harassment, including how to report it and how to obtain treatment if they become a victim. The offender shall sign an acknowledgement form indicating that this information was provided and understood. The acknowledgement form shall be filed in the offender's facility packet. (This shall be filed in Section 3 of the adult offender record and Section 4 of the DYS Youth record.) Accommodations described in item 4 of this section shall be documented on the bottom of the Offender Education form.

6. In addition to providing such education, the Department shall ensure that key information is continuously and readily available or visible to offenders through posters, offender handbooks, or other written formats. Offender PREA brochures shall be available upon request in all housing units and law libraries.

**D. Specialized Training: Investigations (115.34/334)**

1. In addition to the general training provided to all employees pursuant to 115.31/331, the Department shall ensure that all investigators have received training in conducting sexual abuse investigations in confinement settings.

2. Specialized training shall include techniques for interviewing sexual abuse victims, proper use of Miranda and Garrity warnings, sexual abuse evidence collection in confinement settings, and the criteria and evidence required to substantiate a case for administrative action or prosecution referral.

3. The Department shall maintain documentation that Department investigators have completed the required specialized training in conducting sexual abuse investigations.

**E. Specialized training: Medical and Mental Health Care (115.35/335)**

1. The Department shall ensure that all full and part-time medical and mental health care practitioners who work regularly in facilities have been trained in:

   a. How to detect and assess signs of sexual abuse and sexual harassment;

   b. How to preserve physical evidence of sexual abuse;

   c. How to respond effectively and professionally to victims of sexual abuse and sexual harassment; and,

   d. How and to whom to report allegations or suspicions of sexual abuse and sexual harassment.

2. Facility Health Services staff shall not conduct forensic examinations unless required by contract. Health Services staff shall provide emergent medical care and preserve physical evidence, as required by all staff, in coordination with investigators.

3. The Department shall maintain documentation that medical and mental health practitioners have received the training referenced in this standard either from the Department or elsewhere.

4. Medical and Mental Health care practitioners shall also receive the training mandated for employees under 115.31/331 or for contractors and volunteers under 115.32/332, depending upon the practitioner's status at the Department.

VII. <u>SCREENING FOR RISK OF SEXUAL VICTIMIZATION AND ABUSIVENESS:</u>

**A. Screening for Risk of Victimization and Abusiveness (115.41)**

1. All offenders shall be assessed during an Intake screening and upon transfer

to another facility for their risk of being sexually abused by other offenders or sexually abusive toward other offenders.

2. Intake screening shall ordinarily take place within seventy-two (72) hours of arrival at the facility.

   Within twenty-four (24) hours of an offender's admission to a Department Intake unit, staff shall assess an offender through interviews and reviews of the offender's record to attempt to determine whether the offender may be a potential sexual aggressor or a potential sexual abuse victim. Within seventy-two (72) hours of arrival at a facility, Intake staff shall ensure a new Adult SVAT is completed based on information from the interview with the offender and the offender's record. The Adult SVAT Questionnaire shall be used to conduct the offender interview.

3. Such assessments shall be conducted using an objective screening instrument. This assessment shall use the Adult Sexual Violence Assessment Tool.

4. The Intake screening shall consider, at a minimum, the following criteria to assess offenders for risk of sexual victimization:

   a. Whether the offender has a mental, physical, or developmental disability;

   b. The age of the offender;

   c. The physical build of the offender;

   d. Whether the offender has previously been incarcerated;

   e. Whether the offender's criminal history is exclusively nonviolent;

   f. Whether the offender has prior convictions for sex offenses against an adult or child;

   g. Whether the offender is or is perceived to be gay, lesbian, bisexual, transgender, intersex, or gender nonconforming;

   h. Whether the offender has previously experienced sexual victimization;

   i. The offender's own perception of vulnerability.

5. The initial screening shall consider prior acts of sexual abuse, prior convictions for violent offenses, and history of prior institutional violence or sexual abuse, as known to the Department, in assessing offenders for

risk of being sexually abusive.

6. Within a set time period, not to exceed thirty (30) days from the offender's arrival at the facility, the facility shall reassess the offender's risk of victimization or abusiveness based upon any additional, relevant information received by the facility since the intake screening.

   Twenty-one (21) days from the offender's transfer, but not to exceed thirty (30) days, staff shall reassess the offender's risk of victimization or abusiveness considering any additional information received by the facility since the Intake assessment and complete a new Adult SVAT if needed. This review shall be documented in the Thirty (30) Day Review section on the bottom of the Adult SVAT form. The Adult SVAT shall be reviewed at each offender's annual classification review. This review shall be documented on the Adult SVAT. If there is a change in the previous scoring, a new Adult SVAT shall be completed.

7. An offender's risk level shall be reassessed when warranted due to a referral, request, incident of sexual abuse, or receipt of additional information that bears on the offender's risk of sexual victimization or abusiveness. Any incident of sexual abuse or sexual harassment shall trigger a review of the alleged victim and alleged perpetrator Adult SVAT, unless the incident is unfounded.

8. Offenders may not be disciplined for refusing to answer, or for not disclosing complete information in response to questions asked pursuant to paragraphs (4)(a), (4)(g), (4)(h), or (4)(i) of this section.

9. The Department shall implement appropriate controls on the dissemination within the facility of responses to questions asked pursuant to this standard in order to ensure that sensitive information is not exploited to the offender's detriment by staff or other offenders. The results of this assessment shall be considered confidential and filed in the offender's facility packet in the confidential section. Access shall be in accordance with Policy and Administrative Procedure 01-04-104, "Offender Records."

**B. Obtaining Information from Offenders. (Applies to Juvenile Facilities Only 115.341)**

1. Within seventy-two (72) hours of the offender's arrival at the facility and periodically throughout an offender's confinement, the Department shall obtain and use information about each offender's personal history and behavior to reduce the risk of sexual abuse by or upon an offender.

2. Such assessments shall be conducted using an objective screening instrument. This assessment shall be completed using the Juvenile Sexual Violence Assessment Tool.

3. At a minimum, the facility shall attempt to ascertain information about:

   a. Prior sexual victimization or abusiveness;

   b. Any gender nonconforming appearance or manner or identification as lesbian, gay, bisexual, transgender, or intersex, and whether the offender may therefore be vulnerable to sexual abuse;

   c. Current charges and offense history;

   d. Age;

   e. Level of emotional and cognitive development;

   f. Physical size and stature;

   g. Mental illness or mental disabilities;

   h. Intellectual or developmental disabilities;

   i. Physical disabilities;

   j. The offender's own perception of vulnerability; and,

   k. Any other specific information about individual offender that may indicate heightened needs for supervision, additional safety precautions, or separation from certain other offenders.

4. This information shall be ascertained through an interview with the offender during the Intake process using the Juvenile SVAT Questionnaire and Medical and Mental Health screenings; during classification assessments; and by reviewing court records, case files, facility behavioral records, and other relevant documentation from the offender's files.

5. The Department shall implement appropriate controls on the dissemination within the facility of responses to questions asked pursuant to this standard in order to ensure that sensitive information is not exploited to the offender's detriment by staff or other offenders.

**C. Use of Screening Information (115.42)**

1. The Department shall use information from the risk screening required by 115.41/341 to inform housing, bed, work, education, and program assignments with the goal of keeping separate those offenders at high risk of being sexually victimized from those at high risk of being sexually abusive.

2. The Department shall make individualized determinations about how to ensure the safety of each offender.

3. In deciding whether to assign a transgender or intersex offender to a facility for male or female offenders (see Policy and Administrative Procedure 02-01-118, "Transgender and Intersex Offenders"), and in making other housing and programming assignments, the Department shall consider on a case-by-case basis whether a placement would ensure the offender's health and safety, and whether the placement would present management or security problems.

4. Placement and programming assignments for each transgender or intersex offender shall be reassessed twice each year to review any threats to safety experienced by the offender.

5. A transgender or intersex offender's own views with respect to their own safety shall be given serious consideration.

6. Transgender and intersex offenders shall be given the opportunity to shower separately from other offenders.

7. The Department shall not place lesbian, gay, bisexual, transgender, or intersex offenders in dedicated facilities, units, or wings solely on the basis of such identification or status, unless such placement is in a dedicated facility, unit, or wing established in connection with a consent decree, legal settlement, or legal judgment for the purpose of protecting such offenders.

**D. Placement of Juvenile Offenders in Housing, Bed, Program, Education, and Work Assignments. (Applies to Juvenile Facilities Only 115.342)**

1. The Department shall use all information obtained pursuant to 115.34/341 and subsequently to make housing, bed, program, education, and work assignments for offenders with the goal of keeping all offender safe and free from sexual abuse.