UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| AUTUMN CORDELLIONE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER, INDIANA DEPARTMENT<br>OF CORRECTION in his official capacity,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)　No. 3:23-cv-00135-RLY-CSW<br>)<br>)<br>)<br>)<br>)<br>) |

**Order Granting Motion to Renew or Extend Preliminary Injunction and
Resolving Other Pending Motions**

On September 17, 2024, this court granted Plaintiff Autumn Cordellioné's motion for preliminary injunction, concluding that (1) gender-confirming surgery is a medically necessary treatment option for some individuals with gender dysphoria; and (2) Ms. Cordellioné is an individual for whom this procedure is medically necessary. Dkts. 96, 97. The court ordered that the Commissioner of the Indiana Department of Correction ("IDOC") should be preliminarily enjoined to take all reasonable actions to secure Ms. Cordellioné gender-affirming surgery at the earliest opportunity.[1] Dkt. 97 at 2. Defendant is appealing the court's grant of the motion for preliminary injunction but has not sought a stay of the proceedings while the appeal is pending. Dkt. 98; *see also* USCA Case Number 24-2838.

Ms. Cordellioné seeks to extend the injunction for the second time. For the reasons that follow, her motion to renew or extend preliminary injunction, dkt. [147], is **granted**. The court addresses that and other pending motions in the order below.

---

[1] The IDOC Commissioner at the time of the preliminary injunction proceedings was Christina Reagle. Lloyd Arnold is the IDOC Commissioner at present time. *See* Indiana Department of Correction: Leadership Team, https://www.in.gov/idoc/about/commissioners-office/ (last visited Mar. 5, 2025).

1

### I. Motion to Renew or Extend Preliminary Injunction

#### A. Background

The court granted Ms. Cordellioné's motion for injunctive relief based on findings of fact and conclusions of law made after the court held an evidentiary hearing on March 26, 2024. The court need not recount its findings and conclusions at length here, but in summary, the court found the following:

- Ms. Cordellioné has been diagnosed with gender dysphoria since 2020. Dkt. 96 at 22.

- The widespread medical consensus is that gender-affirming surgery is a medically necessary form of care for some individuals with gender dysphoria. *Id.* at 16.

- Ms. Cordellioné is a person for whom gender-affirming surgery is medically necessary. *Id.* at 30. This conclusion was based on the court finding that Ms. Cordellioné and Dr. Randi Ettner, Ms. Cordellioné's expert, were credible, while Dr. Levine, IDOC's expert, and Dr. Farjellah, a psychologist who met with Ms. Cordellioné twice, were not credible. *Id.*

In its Order granting the motion for preliminary injunction, the court acknowledged that "surgery may take time as it will be provided by a surgeon who is not affiliated with either IDOC or its contracted medical provider. It is therefore the court's intention, given 18 U.S.C. § 3626(a)(2), to renew this preliminary injunction every 90 days until the surgery is provided." Dkt. 96 at 42.

2

The court renewed the preliminary injunction on December 6, 2024.[2] Dkt. 121. Because the injunction is set to expire on March 6, 2025, Ms. Cordellioné has renewed her motion to extend the injunction. Dkt. 147. Defendant's motion for leave to file a surreply, dkt. [155], is **granted**, and the court has considered the argument and evidence presented in Defendant's surreply.

### B. Discussion

Defendant opposes the renewal of the preliminary injunction for two reasons: first, he argues that the Seventh Circuit's opinion in *K.C. v. Individual Members of the Medical Licensing Board of Indiana,* 121 F.4th 604 (7th Cir. 2024), requires the court's reconsideration of the injunction as to both the Eighth Amendment and Fourteenth Amendment claims; and second, he argues that Clinical Psychologist Kelsey Beers' evaluation of Ms. Cordellioné and subsequent report undermine the court's factual determinations regarding Ms. Cordellioné's appropriateness for gender-affirming surgery. Dkt. 150.

#### i. Legal Development-- *K.C.*

In *K.C.*, the Seventh Circuit reversed this district court's order and vacated a preliminary injunction that enjoined Indiana from enforcing a statute that prohibited Indiana physicians from providing gender-affirming care in the form of hormone therapy and puberty blockers to minors. 121 F.4th at 610, 633. In that case, the plaintiff brought challenges under the Equal Protection Clause, substantive due process, the First Amendment's Free Speech Clause, the Affordable Care Act, and the Medicaid statute. *Id.* at 612.

Relevant to this case is the Seventh Circuit's analysis of the equal protection claim. The Court determined that it was error to find that the challenged statute discriminated on the basis of

---

[2] The court regrets it did so without first providing Defendant a time to respond. However, the court now addresses Defendant's arguments as to why the injunction should not be extended for a second time and finds them unavailing.

3

sex. *Id.* at 617-18. It reasoned that the challenged statute

> bars gender transition procedures regardless of whether the patient is a boy or a girl: Nobody may receive the treatment the state has chosen to regulate. So, sex does not indicate on what basis treatment is prohibited. The law does not create a class of one sex and a class of another and deny treatment to just one of those classes.

*Id.* at 617. This reasoning applies equally to the challenged statute here. That is, gender reassignment surgery is prohibited whether a transgender woman or transgender man is seeking the surgery.

The Seventh Circuit next rejected the plaintiffs' argument that the statute was subject to heightened scrutiny on the basis of transgender status. *Id.* at 620. Thus, the Court examined whether there was a rational basis for enacting the statute, and the Court determined there was. First, the Seventh Circuit provided the standard for rational basis review:

> "When applying rational basis review to an equal protection claim, we are highly deferential to the government." *Hope v. Comm'r of Ind. Dep't of Corr.*, 66 F.4th 647, 650 (7th Cir. 2023). If "any reasonably conceivable state of facts … could provide a rational basis for the classification," the challenged law is constitutional. [*FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)].

*Id.* at 621. The court must first "identify a legitimate end" and then "must ask whether the means—the classification—bears a rational relationship to the end." *Id.* (cleaned up). The Court then determined that the statute passed rational review because "[p]rotecting minor children from being subjected to a new and heavily challenged medical treatment is a legitimate end. The two classifications—age and medical diagnosis—are rationally related to this end." *Id.*

Based on the Seventh Circuit's ruling in *K.C.*, the court agrees with Defendant that Ms. Cordellioné has not shown a substantial likelihood of success on the merits of her equal protection claim. That is, the court finds that at least one of the government's proffered rationales meets rational basis: that the state has an interest in prisoner rehabilitation and reintegration into society by ensuring that incarcerated persons can transition effectively to life after prison with reduced

4

risk of recidivism. Dkt. 94 at 62-63 (citing *Campbell v. Kallas*, 936 F.3d 536, 540 (7th Cir. 2019) (expert acknowledging that an incarcerated transgender person cannot follow the recommendation that he or she live for twelve months as their preferred gender before gender-confirmation surgery due to the limits inherent in being incarcerated).

The Seventh Circuit's decision in *K.C.* does not, however, modify this court's determination that Ms. Cordellioné has demonstrated a likelihood of success on her Eighth Amendment claim. The Court in *K.C.* does state in part that some courts have expressed doubt concerning whether the World Professional Association for Transgender Health's ("WPATH") guidelines reflect medical consensus as to treatments for gender dysphoria. 121 F.4th at 611. But it is important to remember the context of the claims in *K.C.*, which involved the treatment of gender dysphoria for children, not adults. *See id.* at 625-26 (discussing the lack of long history of treatment guidelines for the treatment of adolescents with gender dysphoria). The Seventh Circuit did not revisit its opinions regarding the treatment of incarcerated adults with gender dysphoria, nor did it do any analysis under the Eighth Amendment. Those decisions—*Campbell v. Kallas*, 936 F.3d 536 (7th Cir. 2019), *Fields v. Smith*, 653 F.3d 550 (7th Cir. 2011), and others, *see* dkt. 96 at 31-34—remain good law.

In summary, the court concludes that *K.C.* does compel the conclusion that Ms. Cordellioné's likelihood of success on the merits is not substantial for her equal protection claim, but it has no impact on her Eighth Amendment claim.

### ii. Factual Development- Dr. Beers' Report

Defendant next argues that the facts have changed since the court issued its preliminary injunction such that the court should not extend the preliminary injunction.

Psychologist Kelsey Beers, who is the lead psychologist at New Castle Correctional Facility, was tasked with evaluating Ms. Cordellioné's eligibility for gender-confirmation surgery

5

based on a requirement that her treating surgeon receive two referral letters. Dkt. 128-1 at 1-2 (Beers Report); dkt. 152-1 at 9 (Beers Deposition); dkt. 152-1 at 77-78 (email correspondence regarding referral). Dr. Beers concluded that Ms. Cordellioné was not a proper candidate for surgery because of her conclusion that Ms. Cordellioné doesn't have gender dysphoria at all. Dkt. 128-1 at 11-12. Rather, Dr. Beers concluded that Ms. Cordellioné's purported distress is actually a manifestation of her Antisocial Personality Disorder and Borderline Personality Disorder, noting that she "displays an established pattern of attention-seeking behavior." *Id.* at 5-12.

Defendant argues that this report requires reconsideration of the preliminary injunction because it reflects a thoughtful medical opinion which undermines the court's rejection of Dr. Farjellah's and Dr. Levine's evaluation of this case. Defendant states that Dr. Ettner's opinion, on which the court relied, merely "'reflects a difference of opinion among medical professionals, which cannot support a deliberate indifference claim.'" Dkt. 128 at 8 (quoting *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 243 (7th Cir. 2021)).

The court finds that Dr. Beers' report does not require reconsideration of its grant of preliminary injunction for several reasons. First, the court granted the preliminary injunction after being able to hear the testimony of Dr. Farjellah, Dr. Levine, and Dr. Ettner, and being able to consider their credibility. The court has not had that opportunity with Dr. Beers. Second, Dr. Beers' qualifications to render an opinion in this matter are questionable. She acknowledged in an email to IDOC personnel on November 18, 2024, that she has "no training in readiness for gender reassignment surgery" and thus did "not feel comfortable writing a letter at all to be honest." Dkt. 152-1 at 71. She concluded based on her review of Ms. Cordellioné's medical records that she would not recommend Ms. Cordellioné for surgery *before* she conducted the in-person evaluation. *Id.* at 62-63; *see* dkt. 96 at 27-28 (discussing Dr. Levine's lack of credibility given that he made

6

his conclusions about Plaintiff without meeting her). Further, Dr. Beers' conclusion that Ms. Cordellioné does not have gender dysphoria is suspect given the parties' stipulation that Ms. Cordellioné has been diagnosed with gender dysphoria for five years and has been receiving hormonal therapy and other treatment from mental health providers at IDOC for this disorder. *See* dkt. 66 at 6-7 (Stipulation of Fact). Dr. Beers acknowledged that she was not familiar with WPATH's surgical standards before they were sent to her before her assessment of Ms. Cordellioné, and she had never performed any research into gender-confirmation surgery or gender dysphoria in general. Dkt. 152-1 at 20, 25-26, 35-36. As to Ms. Cordellioné's personality disorders, this information is not new. Dr. Ettner explained that Ms. Cordellioné's borderline personality disorder diagnosis did not preclude her diagnosis of gender dysphoria or her eligibility for surgery so long as it was well-controlled, which it was at the time. Dkt. 96 at 29-30. Dr. Beers herself reported after a December 2, 2024, counseling session with Ms. Cordellioné that Ms. Cordellioné was "clinically stable at this time with no remarkable symptoms of depression or anxiety" and that her mental status (including considerations of her perception, thought content, cognition, and insight) was within normal limits. Dkt. 152-1 at 58-59. Thus, for the same reasons the court rejected Dr. Farjellah's findings as it related to Ms. Cordellioné's personality disorder, the court likewise rejects Dr. Beers' conclusions at this juncture.

　　　In summary, the court finds that Dr. Beers' report does not present a significant factual development that would cause it to reconsider its grant of injunctive relief as to Ms. Cordellioné's Eighth Amendment claim. Ms. Cordellioné's motion to renew or extend preliminary injunction, dkt. [147], is **granted** to the extent that the court will renew its injunction as it relates to her Eighth Amendment claim by separate order.

## II. Other Pending Motions

On October 21, 2024, Ms. Cordellioné filed a motion to order Defendant to seek surgery from different providers. Dkt. 105. That motion, dkt. [105], is **denied**. Defendant's status reports reflect that the IDOC is making a good faith effort to comply with the court's order granting injunctive relief. In particular, Defendant's January 6, 2025, Status Report outlined the extensive efforts it has made to comply with the order, including sending a referral request to a potential surgeon with Indiana University despite Dr. Beers' report. Dkt. 131. Defendant's February 5, 2025, status report reflects that after the IU surgeon declined to accept the case, IDOC has made diligent efforts to seek potential surgeons from other states who might be willing to perform the surgery. Dkt. 144. In short, Defendant's status reports reflect a sincere effort to comply with the injunction.

On November 4, 2024, Ms. Cordellioné moved to consolidate this case with two later-filed cases, *Allison v. Commissioner, Indiana Department of Correction*, No. 1:24-cv-577-RLY-CSW (filed April 2, 2024), and *Wallace v. Commissioner, Indiana Department of Correction*, No. 1:24-cv-603-RLY-CSW (filed April 5, 2024), that challenge the same statute. Dkt. 109. "The purpose behind a Rule 42(a) consolidation is to promote judicial efficiency, but not if prejudice caused to any of the parties outweighs it." *Babayemi v. NOW Courier, Inc.*, 2023 WL 3918962, *3 n.2 (S.D. Ind. June 9, 2023) (quotation and citation omitted). This motion, dkt. [109], is **denied without prejudice**. This case is in a different procedural posture than *Allison* and *Wallace*, which are in their early stages of discovery. If the Seventh Circuit reverses or modifies the injunction issued in this court, the parties' time and expense related to discovery in *Allison* and *Wallace* will have been for nought. Ms. Cordellioné may seek reconsideration of the motion to consolidate after the Seventh Circuit has ruled on Defendant's challenge to the preliminary injunction in this case.

### III. Conclusion

In summary, Ms. Cordellioné's motion to renew or extend preliminary injunction, dkt. [147], is **granted** insofar as the court extends the injunction as it relates to her Eighth Amendment deliberate indifference claim. Her motion for emergency request for the court to issue its ruling before the March 6, 2025, expiration of the injunction, dkt. [157], is **granted** consistent with this Order.

The motion to order defendant to seek a different surgeon, dkt. [105], is **denied**. The motion to consolidate cases, dkt. [109], is **denied without prejudice**. The motion for leave to file surreply, dkt. [155], is **granted**. The **clerk is directed** to docket the proposed surreply at docket 155-2 as the surreply, and to update the docket from "Commissioner, Indiana Department of Correction, in her official capacity" to "Commissioner, Indiana Department of Correction, in his official capacity," in light of the change in IDOC Commissioner. Fed. R. Civ. P. 25(d).

**IT IS SO ORDERED.**

Date: 3/05/2025

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel